

Christopher H. Lowe

420 Lexington Avenue, Suite 1830
New York, New York 10170
Main: 212.392.4772
Direct: 212.764.7171
Fax: 212.444.1030
chris@lipskylowe.com

www.lipskylowe.com

May 21, 2024

VIA ECF
Hon. Katharine H. Parker, U.S.M.J.
U.S. District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   Asaro v. Precision Document Solutions, Inc.,1:23-cv-05739 (PAE)(KHP)

Dear Magistrate Judge Parker:

This firm represents Plaintiff Albert Asaro in this Fair Labor Standards Act and New York Labor Law matter. We submit this letter seeking the Court's approval of the settlement agreement under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and *Wolinsky v. Scholastic Inc.*, No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918 (S.D.N.Y. July 5, 2012).[1]  Defendant does not oppose this application.

I.   Summary of Plaintiff's Claims and Damages

A.   Plaintiff's Duties and Background

Defendant Precision Document Solutions, Inc., a foreign corporation licensed to do business in New York, allegedly employed Plaintiff as a Printer Tech from in or about May 2017 to in or about August 2019. He claims that his duties included trouble shooting, repairing, and maintaining printers, scanners and copies for Defendant's clients. He also claims that the Printer Tech position required him to carry tools and parts from job to job, to lift and carry 50 lbs. or more, and to safely, bending, pulling, reaching and physically manipulating tools and parts with his hands. Plaintiff Asaro alleges that he spent more than 25% of his time performing physical labor.

B.   Hours Worked.

From May 2017 to August 2019, Plaintiff Asaro had a regular, fixed 40-hour weekly schedule: working 5 days per week, 8 hours per day. But these were not the only hours he alleges he worked. Plaintiff Asaro alleges that he typically would clock in and out

---

[1] On April 15, 2024, the parties filed a Consent to Jurisdiction by a U.S. Magistrate Judge. (Dkt. 37).



for his regular shift, but on many days would perform additional duties, such as completing reports, ordering parts, and/or emailing before or after his regular shift, raising his total hours per week to 41-42 hours. Plaintiff Asaro also alleges that he regularly worked through all or part of his unpaid lunch breaks, further increasing his unpaid hours of work.

    C.    <u>Unpaid Wages</u>

Defendant paid Plaintiff Asaro at his regular rate of pay for 40 hours per week every 14 days during the relevant time period. Asaro alleges however, that Defendant, never paid him at the overtime premium rate of 1.5 times his regular rate for hours worked in excess of 40 in a week, violating the FLSA and New York Labor Law.

These are not Defendant's only alleged statutory violations. Under N.Y. Lab. Law § 191, manual workers, like Plaintiff are to be paid weekly not bi-weekly, unless the employer has obtained a variance from the New York Department of Labor. Defendant had no variance. Asaro further alleges that Defendant failed to provide him with the Notice and Acknowledgement of Pay Rate and Payday under N.Y. Lab. Law § 195.1 and failed to provide him an accurate wage statement under N.Y. Lab. Law § 195.3.

    D.    <u>Plaintiff's Legal Claims</u>

Plaintiff asserts claims of unpaid overtime pay under the FLSA and Labor Law, failure to timely pay overtime premium pay under FLSA, and failure to pay wages weekly under the Labor Law. He also asserts claims for record keeping violations under the Labor Law.

    E.    <u>Plaintiff's Damages</u>

Plaintiff estimates his damages to be approximately $80,000. He worked for Defendant from on or about May 2017 to August 2, 2019. Having filed his complaint on July 5, 2023, Plaintiff is entitled to recover unpaid overtime wages, plus liquidated damages for a total of 108.29 weeks.[2] During his employment, he had an hourly rate of $25, which results in an overtime rate of $37.50/hr.[3] He also worked on average 1.5 hours of overtime per week. As a result, Plaintiff was and is entitled to $6,091.31 in overtime pay for his employment period.[4] However, he was paid $0 of overtime pay by Defendant. Based on this, Defendant owes Plaintiff $6,091.31 in unpaid overtime wages, plus an additional equal amount of $6,091.31 in liquidated damages, for a total of $12,182.62.[5]

Plaintiff, as a manual worker under the Labor Law, was also entitled to be paid weekly. Defendants paid him bi-weekly. For each week in which he was not timely paid, i.e., the first week of each bi-weekly pay period, Plaintiff maintains that he is entitled to recover as liquidated damages an amount equaling 100% of his wages for that week. As

---

[2] 108 weeks and 2 days. 2days ÷ 7 days = .2857 of a week, resulting in 108.29 weeks.
[3] $25/hr. x 1.5 = $37.50/hr.
[4] $37.50/hr. x 1.5 OT hrs./wk. x 108.29 weeks = $6,091.31
[5] $6,091.31 + $6,091.31 = $12,182.62


such, he is owed approximately $54,000.00 in liquidated damages. [6] Plus, under the Labor Law, he is owed $2,507.00 in prejudgment interest calculated at 9.00% *per annum* on his unpaid wages (but not on his liquidated damages).[7] Plaintiff is further owed $5,000 for Defendant's Labor Law § 195.3 violations. Plaintiff is also entitled to attorneys' fees and costs under the Labor for his state law claims. N.Y. Lab. Law § 198.

F.  Summary of Defendants' Defenses

Defendant maintains it lawfully paid him for all hours worked, and further that the hours Plaintiff claims to have worked are inflated. Moreover, Defendant contends that Plaintiff cannot recover on his weekly pay claim under Labor Law § 191, citing a spilt between the First Department and Second Department of the Supreme Court of New York Appellate Divisions as to whether liquidated damages are recoverable in a private action for failure to pay weekly damages. *See Vega v. CM & Assoc. Constr. Mgt., LLC*, 175 A.D.3d 1144, 107 N.Y.S.3d 286, 288 (1st Dep't 2019); *Grant v Global Aircraft Dispatch, Inc.*, 223 AD3d 712 (2d Dept 2024). This split creates substantial risk that Plaintiff may not be successful in recovering on his NYLL 191 claim, which represents a significant portion of his potential damages. Defendant also asserts that Plaintiff was not a manual worker.

II.  Procedural and Settlement History

On July 5, 2023, Plaintiff Asaro filed his Class & Collective Action Complaint alleging five causes of action; namely, failure to pay overtime under the Fair Labor Standards Act, untimely paid wages under New York Labor Law §191(1)(a)(i), violations of NYLL §§195.1 and 195.3, and failure to pay overtime under NYLL. Plaintiff timely served the Summons and Complaint upon this out-of-state Defendant via its agent, The Office of Secretary of State, State of New York on July 25, 2023.

After Defendant's failure to answer the Complaint, on September 25, 2023 Plaintiff requested an adjournment of the Initial Case Management Conference to allow time to serve courtesy copies upon Defendant in Carrollton, Texas. (Dkt. 8). The Court granted that request (Dkt. 9). Thereafter, Plaintiff mailed courtesy copies of the Summons, Complaint, and Affidavit of Service, to Defendant via first class mail and FedEx. Defendant again failed to respond and the Clerk issued the Certificate of Default on November 29, 2023 (Dkt. 16). Defendant still did not respond. On January 2, 2024, Plaintiff filed an Order to Show Cause for Default Judgment against Defendant and a Proposed Default Judgment (Dkt. 22 and 24). Thereafter, on January 24, 2024, the Honorable Paul A. Englemayer issued an Order to Show Cause, directing Defendant to enter an appearance prior to February 21, 2024. Defendant appeared on February 16, 2024.

---

[6] $25/hr. x 40hrs./wk. = $1,000/wk.  $1000/wk. x 54/wks. (i.e., every other week of the 108 weeks he worked within the relevant period) = $54,000.00

[7] Aug. 2, 2019 to Jan. 2, 2024 = 230 Weeks.  230/wks. ÷ 52/wks./yr. = 4.42 years. $6,091 x .09 compounded annually over 4 years equals $2,507 of interest.  See, https://www.nerdwallet.com/calculator/compound-interest-calculator



After arm's-length negotiations, including a pre-settlement conference call with the Court, the parties reached agreement on a settlement in principle on April 9, 2024. The Agreement was not, however, fully-executed until May 3, 2024.

III.  The Settlement Agreement Should Be Approved As It is Fair and Reasonable Under the Circumstances and Complies with the Second Circuit's Decision in *Cheeks v. Freeport Pancake House, Inc.*

   A.  The Settlement Agreement is Fair and Reasonable.[8]

A court should consider the totality of circumstances to determine whether the proposed settlement is fair and reasonable. This includes at least five factors: (1) the complexity, expense and likely duration of litigation; (2) the stage of the proceedings; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation. *Alvarez v. Sterling Portfolio Inv. L.P.*, No. 1:16-cv-5337 (CBA)(VMS), 2017 U.S. Dist. Lexis 206043, at *25 (E.D.N.Y. Dec. 13, 2017); *Wolinsky v. Scholastic Inc.*, No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918, at *4-5 (S.D.N.Y. July 5, 2012) (citing *Medley v. Am. Cancer Soc.*, No. 1:10-cv-3214 (BSJ), 2010 U.S. Dist. LEXIS 75098, at *3 (S.D.N.Y. July 23, 2010)).

   1.  The settlement is reasonable and fair in view of the case's complexity, expense and the duration of the litigation.

While certain parts of this FLSA matter are not highly complex, serious factual questions exist that would require heavy litigation. The parties do not agree on the basic facts, including the hours Plaintiff worked and the wages he received. If this case were to proceed, the parties would need to conduct full discovery, including potentially deposing third-party witnesses who would testify on the hours Plaintiff worked. This litigation would be costly and time-consuming. As such, this factor favors approving the settlement. *See Marshall v. Deutsche Post DHL*, 1:13-cv-1471 (RJD) (JO), 2015 U.S. Dist. Lexis 125869, at *12 (E.D.N.Y. Sept. 21, 2015) (finding that costly litigation favors approving settlement).

   2.  The settlement is reasonable and fair considering the stage of the proceedings.

The parties participated in meaningful arms-length settlement discussions, allowing them to adequately evaluate the strengths and weaknesses of their respective claims and defenses, even at this early stage of the case. This favors approving the settlement.

   3.  The settlement is reasonable and fair considering the risks of establishing liability and damages.

A considerable risk to Plaintiff's case is establishing the hours he worked  Based on the hours Defendants' claim he worked, Plaintiff would be entitled to a minimum

---

[8] A copy of the fully executed Settlement Agreement is attached hereto as Ex. A.


amount or no amount of damages. But the settlement avoids this risk. Moreover, as noted above, the law in the area of Labor Law § 191 weekly pay claims is particularly unsettled, with a split between the First and Second Departments. *See Vega v. CM & Assoc. Constr. Mgt., LLC*, 175 A.D.3d 1144, 107 N.Y.S.3d 286, 288 (1st Dep't 2019); *Grant v Global Aircraft Dispatch, Inc.*, 223 AD3d 712 (2d Dept 2024). It is accordingly uncertain whether, or how much, Plaintiff would recover at trial, if anything at all. This factor, therefore, favors approval of the settlement. *See Marshall*, 2015 U.S. Dist. Lexis 125869, at *13 (explaining because the case was not a "slam dunk" these factors favor approval); *Bodon v. Domino's Pizza, LLC*, No. 1:09-cv-2941 (SLT), 2015 U.S. Dist. Lexis 17358 (E.D.N.Y. Jan. 16, 2015) ("[T]she question [in assessing the fairness of a class action settlement] is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the uncertainties the class faces . . . .").

    4. <u>The settlement is reasonable and fair considering Defendants' ability to withstand a larger judgment.</u>

 Given the relatively small size this settlement vis-a-vis the estimated damages, this factor is neutral.

    5. <u>The settlement is reasonable and fair considering Plaintiff's best possible recovery and the litigation risks.</u>

 Plaintiff calculates his total recovery to be just over of $80,000 and recognizes that a recovery of $0 is a possibility. To obtain his maximum damages, Plaintiff would have to establish liability and prove his claimed damages, which Defendant will contest as outlined above. The settlement of $40,000 represents a nearly 50% recovery. This range favors approval. *See Alvarez*, 2017 U.S. Dist. Lexis 206043, at * 25. (approving an FLSA settlement where plaintiff's recovery range varied significant on the success of certain defenses).

    B. <u>The Agreement Is the Product of Arm's-Length Settlement Negotiations.</u>

 The settlement was reached after the parties participated in a pre-settlement conference call with Your Honor and arms-length negotiations between experienced counsel on both sides. These factors favor approval. *See Reyes v. 1944 First Ave. Deli Co., LLC*, No. 16-cv-8073 (KBF), 2017 U.S. Dist. LEXIS 189177, at *9 (S.D.N.Y. Nov. 14, 2017) (approving settlement that was reached following a settlement conference with the Magistrate Judge); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 1:09-cv-486 (ETB), 2012 U.S. Dist. Lexis 144446, at * 7-8 (E.D.N.Y. Oct. 4, 2012) (approving settlement that was reached following arm's-length negotiations and with a mediator's assistance).

    C. <u>The Agreement Complies with the Second Circuit's Decision in *Cheeks v. Freeport Pancake House*.</u>

 In August 2015, the Second Circuit resolved an arguably unsettled issue: parties cannot privately settle FLSA claims without either the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d



Cir. 2015). The Court also explained in *dicta* when an FLSA settlement is valid. Namely, it questioned the validity of agreements that contain confidentiality provisions, single-sided general releases and attorneys' fees that go beyond a certain percentage. *Id*. None of those issues are present in the Agreement.

      1.     <u>The Agreement complies with *Cheeks* since it is publicly filed.</u>

The Agreement does not contain a confidentiality provision and the parties acknowledge it will be publicly available and filed on the CM/ECF system. This concern thus does not exist, favoring approval.

      2.     <u>The Agreement complies with *Cheeks* since it contains a limited release.</u>

The release in this matter is not general, but rather limited to wage and hour claims and potential claims pursuant to the New York State Labor Law and/or the Fair Labor Standards Act that may legally be waived by private agreement.[9] This favors approval.

IV.    <u>The Court Should Approve Plaintiff Counsel's Fees and Expenses, As the Amounts Are Reasonable</u>

    A.    <u>Counsel's Fees of One-Third of The Settlement Is Reasonable and Regularly Approved.</u>

Plaintiff's Counsel shall receive under the Agreement, subject to the Court's approval, $13,320.00 in fees (i.e., one-third of the $40,000.00 settlement) and $283.34[10] in out-of-pocket expenses, for a total of $13,603.34.[11] This amount is reasonable as contingency fees of one-third in the FLSA context are routinely approved. *See e.g., Emiliano Nieto Zepeda v. Baggio, Ltd.*, No. 1:17-cv-2290 (VB), 2017 U.S. Dist. LEXIS 143332, at *2 (S.D.N.Y. Sept. 1, 2017) (approving one-third request fee request); *Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("[A] fee that is one-third of the fund is typical" in FLSA cases). And it remains reasonable for counsel to receive one-third of the fund even when the plaintiff is not receiving 100% of her claimed damages. *See Emiliano Nieto Zepeda*, 2017 U.S. Dist. LEXIS 143332, at *2 (approving one-third request when plaintiff is receiving 50% of her claimed damages).

    Also, this firm assumed a meaningful financial risk when agreeing to represent Plaintiff under this contingency fee arrangement. We took on the case with no guarantee if and when there would be a resolution, while investing our time and effort and advancing costs – all with no guarantee of any compensation. Indeed, in unsuccessful cases, this firm does not recover anything despite its significant investment time and expenses. This assumption of risk is unique to the plaintiffs' bar and further favors approving the one-third

---

[9] Ex. A., Settlement Agreement ¶ 4.
[10] Expenses report, Ex. C.
[11] Ex. A, Settlement Agreement ¶ 3(c).



contingency fee. *See Garcia*, 2012 U.S. Dist. Lexis 144446, at *20; *Campos v. Goode*, No. 1:10-cv-224 (DF), 2011 U.S. Dist. Lexis 22959, at *19 (S.D.N.Y. March 4, 2011).

> B. Counsel's Fee Request Is Further Reasonable Considering Their Hourly Rates and Hours Expended.

Lipsky Lowe has expended more than 42.88 hours, equaling $14,277.70 in fees: 27.9 hours for Christopher Lowe (partner) at $450 per hour, totaling and 14.98 hours for LiAnne Chan (paralegal) at $115 per hour, totaling $14,277.70.[12]  These hours and rates are reasonable.

> 1. Counsel's fee request is reasonable considering the requested hourly rates, their experience and previously approved rates.

Counsel requests a rate of $450 for partner Christopher Lowe, which is reasonable considering his background: he has practiced employment law for over 25 years; he has been a member of the New York State Bar Association, Wage and Hour Committee; he has presented on numerous issues, including presenting to the New York State Academy of Trial Lawyers on employment law and the FLSA; he was a contributing authority and editor on a treatise on wage and hour litigation, Wage & Hour Collective and Class Litigation, ALM Law Journal Press (2012); prior to founding Lipsky Lowe, he was a Partner at Seyfarth Shaw LLP in its Employment Practice and Wage & Hour Practice Groups, which were consistently ranked as one of the top employment practice groups in the Country. During has time at Seyfarth Shaw LLP, Mr. Lowe represented numerous Fortune 500 companies in wage hour matters, including in nationwide class actions and MDL proceedings.

Courts in this District have approved the rate requested here for attorneys of similar experience in FLSA matters. *See e.g., Pastor v. Alice Cleaners, Inc.*, 1:16-cv-7264 (JLC), 2017 U.S. Dist. LEXIS 192806 at *17 (S.D.N.Y. Nov. 21, 2017) ("Courts find rates in the $250 to $450 range reasonable for experienced litigators working on wage-and-hour cases); *Apolinario v. Luis Angie Deli Grocery, Inc*., No. 1:14-cv-2328-GHW, 2015 U.S. Dist. LEXIS 97330, at *5 (S.D.N.Y. July 27, 2015) ("In recent years, courts in this district have awarded rates between $350 and $450 per hour for partners with significant employment litigation experience."); *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514 (S.D.N.Y. 2011) (awarding rate of $450 for a partner who graduated law school in 2001).

The requested rate of $115 for the paralegal on the case, Ms. LiAnne Chan, is reasonable. Ms. Chan has worked as a paralegal for almost 15 years, with 8 of those years specific to employment law. Her requested rate is consistent with what other courts have approved. *See Raiter, et al. v. Dessert Palace Bose Inc. et al.*, 1:21-cv-04410 (CLP) (E.D.N.Y. Aug. 4, 2022) (approving an hourly rate of $115 for a Lipsky Lowe paralegal in an FLSA matter); *Diaz v. Rockland Gardens Associates*, 7:22-cv-3281 (S.D.N.Y. February 3, 2023) (same); *Enriquez et al v. 189 Chrystie Street Partners, LP et al*, 21-11195

---

[12] Contemporaneous and near contemporaneous time records, Exhibit B.

(S.D.N.Y. May 12, 2023) (approving LiAnne Chan's $110 hourly rate); *Ilyina v. Fantasy Lake Resort Inc., et al.*, 1:19-cv-4845 (JRC) (E.D.N.Y. May 4, 2023) (approving $110). *Diaz-Caballero v. Midtown Catch Corp.*, No. 18-cv- 4672 (AT), 2020 U.S. Dist. LEXIS 66734, at *6 (S.D.N.Y. Apr. 15, 2020) ("[h]ourly rates for paralegals of $100 to $150 per hour are typical for awards in this [d]istrict."); *Tatum v. The City of New York*, No. 06-cv-4290 (PGG) (GWG), 2010 U.S. Dist. LEXIS 7748 (S.D.N.Y. Jan. 28, 2010) (finding that $125 was reasonable rate for paralegals). *Lazaro v. Best Fish Mkt. Corp.*, 2022 U.S. Dist. LEXIS 17015, at *5 (E.D.N.Y. Jan. 29, 2022) (noting that a paralegal rate of $125 was "within the parameters in this district");

> 2. Counsel's fee request is further reasonable considering they regularly represent clients who pay them rates that are greater than the requested rates.

Mr. Lowe often represents individuals and businesses at hourly rates that exceed the requested rates: clients regularly agree to pay Mr. Lowe $600 or more per hour. This further underscores the reasonableness of the requested rate, as it reflects the market rate for an attorney of his experience. *See Anthony v. Franklin First Fin., Ltd.*, No. 09-cv005578 (BSJ)(RLE), 2012 U.S. Dist. LEXIS 21730, at *8 (S.D.N.Y. Feb. 16, 2012) (involving the court "giving significant weight" to redacted engagement letters to approve the requested hourly rates); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (explaining "the range of rates that plaintiff's counsel actually charge their clients . . . is obviously strong evidence of what the market will bear").

> 3. Counsel's fee request is further reasonable considering hourly rates are not stagnant.

These rates are further reasonable when considering hourly rates are not stagnant: they generally increase each year, resulting in the market rate for a Senior Associate in 2021 being greater than what it was in 2014. The average attorney hourly rates in New York, in fact, increased by 3% in 2021. It accordingly follows that the hourly rates that were approved in earlier years do not reflect what those rates would be in today's market for someone with the same experience. Putting this in context, the $450 hourly rate that was approved in 2017 for the Partner in *Pastor v. Alice Cleaners, Inc.* would be $504 in today's market, reinforcing the requested rate for Mr. Lowe.

> 4. Counsel's fees are further reasonable considering their lodestar is greater than the requested fees.

Counsel's lodestar is, as explained above, $14,277.70. Counsel, however, seeks only $13,320.00 in fees (i.e., one-third of the $40,000.00 settlement) and $283.34 in out-of-pocket expenses, for a total of $13,603.34



The Honorable Katharine H. Parker
May 21, 2024
Page 9 of 9

V.    <u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the Agreement and award the requested attorneys' fees and expenses.

        Respectfully submitted,
        LIPSKY LOWE LLP

        <u>s/ Christopher H. Lowe</u>
        Christopher H. Lowe

CC:    Defense Counsel (Via ECF)